IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| WILLIE LEE HARRIS, | ) |
| Plaintiff, | ) ) ) |
| v. | ) CIVIL ACTION NO. 99-JEO-2187-S ) |
| OFFICER WILLIAM NORMAN, | ) ) |
| Defendant. | ) |

## MEMORANDUM OPINION

This matter is before the court for decision on the merits following a non-jury trial on May 15, 2001. After consideration of the testimony, exhibits, and arguments of the parties, the court finds that judgment is due to be entered in favor of the defendant.

## I. PROCEDURAL BACKGROUND

Willie Lee Harris ("the plaintiff" or "Harris") is an Alabama State inmate incarcerated at the St. Clair Correctional Facility in the Segregation Unit. He filed this *pro se* action pursuant to 42 U.S.C. § 1983 on August 20, 1999. He alleged that he was deprived of rights, privileges, or immunities afforded him under the Constitution or laws of the United States of America and named various defendants. Specifically, he alleged that he was subjected to cruel and unusual punishment in violation of the Eighth Amendment (doc. 1, count 1) and that the defendants entered into a conspiracy against him (count 2). In an order dated October 6, 1999, the court dismissed the allegations against all the defendants except William Norman ("the defendant" or "Norman"). (Doc. 9). The plaintiff was permitted to proceed on his remaining claim of cruel and unusual punishment against Norman. He seeks five million dollars in damages. In accordance with the usual practices of this court and 28 U.S.C. § 636(b)(2), the complaint was

referred to the undersigned magistrate judge for a preliminary report and recommendation. *See McCarthy v. Bronson*, 500 U.S. 136, 111 S. Ct. 1737, 114 L. Ed. 2d 194 (1991).

Upon order of the court, on December 20, 1999, the defendant filed a special report accompanied by copies of institutional incident reports, disciplinary reports, medical reports, and the affidavit of Norman addressing the Eighth Amendment claim. The plaintiff responded to the defendant's special report by filing his special report, various motions, and affidavits. (Doc. 11, 14, 16, 18, 21, 22). The undersigned determined that there were material facts in dispute on the remaining claim, recommended that the defendant's special report be treated as a motion for summary judgment, and, as such, that it be denied. (Doc. 24, p. 6). The recommendation was adopted by Chief United States District Judge Sam C. Pointer, Jr. (Doc. 27). The case was referred to the undersigned for an evidentiary hearing and preparation of a report and recommendation for Judge Pointer's consideration. (*Id.*). The defendant was also ordered to file an answer. (*Id.*). An answer was filed on March 21, 2000. (Doc. 28). Norman asserted that the plaintiff's complaint failed to state a claim upon which relief can be granted, that he was entitled to qualified immunity, and that the plaintiff's allegations were without merit. (*Id.*).

On April 27, 2000, the court required the parties to submit pretrial narratives concerning their respective positions. (Doc. 31). Both parties filed the required statements. (Doc. 32, 34).

According to the plaintiff's statement, Norman entered his cell on August 7, 1999, accused him of "openly masturbating in front of" a female officer through "the tray hole" in his cell door in the Segregation Unit and slapped him. (Doc. 34, p. 1). When Norman later returned to the vicinity of his cell with juice, the plaintiff told Norman, "never put his hands in his (plaintiff's) face again." (*Id.*, p. 2). In response to the plaintiff's remark, Norman entered the plaintiff's cell and hit him repeatedly with an "iron" pitcher "aside" his head. (*Id.*). The plaintiff

2

was bleeding from the eye and head and purportedly lost consciousness. (*Id.*). He remembers being handcuffed and dragged down a flight of stairs into a hallway where he was beaten again with the pitcher by the defendant. (*Id.*). He was then taken to the infirmary. In the statement, the plaintiff further challenges the defendant's factual assertions. (*Id.*, pp. 2-4).

As noted in previous filings, Officer Norman relates an entirely different scenario. He asserts that he informed the plaintiff that he was going to be charged with a violation of prison regulations for masturbating. He states that after he and Officer Marc Walker ("Walker") served the meals to the inmates, they went to the plaintiff's cell because of the infraction and to take the plaintiff to the shift commander's office. Walker then placed handcuffs on the plaintiff through the tray hole in the cell door. Correctional Officer Tinley Parker opened the cell door at Norman's request and the plaintiff "walked out of his cell towards Defendant Norman and stated, "Bitch I will kill your black ass." (Doc. 19, Norman affidavit, p. 2). Norman pushed the plaintiff away and back into the cell. The plaintiff fell face down on his bed. Norman states that he entered the cell, grabbed the chain on the handcuffs, and removed the plaintiff from the bed to take him to the segregation office. (*Id.*). He saw blood on the plaintiff's bed.

According to Norman, the plaintiff continued the abusive language as he was being escorted down the steps by Norman and Walker. The plaintiff then broke away from him, lost his balance, hit the D-side entrance door, and fell, hitting his head on the floor. (*Id.*). Norman picked the plaintiff up off of the floor by his shirt collar and took him to the segregation office where Walker placed leg irons on him. The plaintiff was then taken to the infirmary. (*Id.*).

A pretrial hearing was conducted on March 22, 2001. (Doc. 25). At that time, both parties consented to the jurisdiction of the undersigned magistrate judge to determine the issues to be presented at the trial of this case. (Doc. 36). Accordingly, on May 15, 2001, the case was

tried without a jury.

## II. THE EVIDENCE

The trial testimony presented very divergent views of what occurred on August 7, 1999, at the St. Clair Correctional Facility Segregation Housing Unit. The plaintiff testified that Norman came to his cell and accused him of masturbating. Harris also stated that Norman slapped him on the face and left the cell. According to Harris, Norman returned later to serve juice to the other inmates. When Norman went by Harris' cell, he told him (Norman) not to put his hand in Harris' face. Norman then ordered Parker to open the cell door. Norman entered the cell and repeatedly struck the plaintiff on the top of his head with a pitcher. He threw the plaintiff on the bed. The plaintiff resisted, but stated that he was no match for the much larger Norman. As a result of Norman's strikes, the plaintiff stated that blood was everywhere in the cell, including the bed, the floor, and the walls. Ultimately, Norman placed the plaintiff in handcuffs and pushed him out of the cell, throwing him to the floor. Norman then dragged the plaintiff down the stairs to a landing that led into a hallway. Once inside the hallway, Norman again hit the plaintiff with the pitcher.

As a result of Norman's conduct, the plaintiff stated that he was bleeding from around his eye and the top of his head. He was also bruised all over his body from Norman's kicking and stomping him.

Norman testified that he was working as a "Rover" in the Segregation Unit when he and Parker observed the plaintiff masturbating. He went to the cell and informed the plaintiff that he had been observed violating a prison regulation (#38).[1] The plaintiff cussed at Norman, told him

---

[1] Rule 38 defines the applicable violation as follows: INDECENT EXPOSURE/EXHIBITIONISM - Exposure to sight of the private parts of the body in a lewd or indecent manner. (Doc. 19, Ex. 9).

4

he did not do a "damned thing," and that Norman should get away from the door. Norman left to serve meals to the other inmates with Walker. After the mealtime, Norman and Walker returned to the plaintiff's cell to deal with the infraction. The plaintiff was handcuffed through the tray door by Walker without incident and Parker was told to open the cell door. She opened the door. The plaintiff was cussing and stated "I aint did [sic] nothing. What are you fucking me for? " He then stepped towards Norman in an "aggressive" manner. Norman reacted by shoving him in the chest towards the back of the cell. Norman stated that he pushed Harris to maintain a six foot distance between him and the inmate as he had been trained. The plaintiff lost his balance and struck the bed that was located on the right side of the cell. He landed face down on the bed. Norman stepped into the cell and grabbed the plaintiff by the handcuffs and lifted him.

The plaintiff was removed from the cell, taken down the stairs and into the hallway. As they entered the hallway, the plaintiff broke away from Norman, who was holding him by the handcuffs. The plaintiff moved forward toward the wall across from the door between the cell block landing and the hallway leading out of the building. Ultimately, he struck his head on a metal track on the floor that was for an opposing door to another cell block.[2] After he hit the track, Norman and Walker lifted the plaintiff up and moved him out of the Segregation Unit. He was placed in leg irons by Walker and taken to the infirmary to be examined.

Walker testified that he was a "Rover" as well. After he and Norman served the meals, they went to the plaintiff's cell to serve him with a notice of the violation. Walker handcuffed the plaintiff and Norman directed Parker to open the cell door so the plaintiff could come out. Walker stated that the plaintiff exited in an aggressive manner towards Norman, that Norman

---

[2] Norman initially was uncertain of what the plaintiff struck when he fell. After the incident, he returned to the hallway and determined that he struck the metal track.

5

reacted by extending his hand into the plaintiff's chest, and that the plaintiff lost his balance, hitting the bed. When Norman pulled the plaintiff up, Walker noticed blood on the bed. They then proceeded out of the cell, down the stairs, and into the hallway. At this point, the plaintiff began struggling. Norman lost his hold on the plaintiff and he fell, hitting the door on the wall opposite the door to the cell block they just left. Walker stated that the plaintiff hit the track for the door. When Norman picked the plaintiff off the floor, Walker noticed a cut on his forehead. They escorted the plaintiff to the infirmary.

Walker testified that the injury depicted on the nurse's chart as a two inch laceration by Harris' left eye was a consequence of his striking the bed in the cell. The injury depicted on the nurse's chart as a small scratch to the front hairline was a consequence of Harris' fall in the hallway. Walker also stated that he had no problem placing the handcuffs on the plaintiff and that Norman did not strike the plaintiff with any pitcher. He stated that Norman never had a pitcher when dealing with Harris.

### III. THE LAW

The Eighth Amendment prohibition against cruel and unusual punishment is triggered when a prisoner is subjected to an "unnecessary and wanton infliction of pain." *Whitley v. Albers*, 475 U.S. 312, 319, 106 S. Ct. 1078, 1084, 89 L. Ed. 2d 251 (1986). The Supreme Court held in *Hudson v. McMillian*, 503 U.S. 1, 112 S. Ct. 995, 117 L. Ed. 2d 156 (1992), that "whenever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishment Clause, the core judicial inquiry [in determining whether a prisoner has suffered unnecessary and wanton pain] is that set out in *Whitley*: whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Id.* at 7, 112 S. Ct. at 999. *See also Harris v. Chapman*, 97 F.3d 499, 505 (11th Cir.

1996). In extending *Whitley* to all cases involving allegations of force, the Court reasoned:

> Many of the concerns underlying our holding in *Whitley* arise whenever guards use force to keep order. Whether the prison disturbance is a riot or a lesser disruption, corrections officers must balance the need "to maintain or restore discipline" through force against the risk of injury to inmates. Both situations may require prison officials to act quickly and decisively. Likewise, both implicate the principle that "'[p]rison administrators . . . should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security.'"

*Hudson*, 112 S. Ct. at 998-99 (citations omitted). With these concerns in mind, the Court set out certain factors that should be considered in evaluating whether the use of force was wanton and unnecessary. They include (1) the need for the application of force, (2) the relationship between the need and the amount of force used, (3) the threat reasonably perceived by the prison official, (4) any efforts made to temper the severity of a forceful response, and (5) the extent of the injury suffered by the inmate. *Id.* at 7-8, 112 S. Ct. at 999. The Court made it clear that the extent of injury suffered by the inmate is only one of the many factors which should be considered, but not necessarily a decisive one, when it said, "[t]he absence of serious injury is therefore relevant to the Eighth Amendment inquiry, but does not end it." *Id.* at 999.

In resolving the conflicts presented in this action, the court must also keep in mind the Supreme Court's admonition that "[p]rison administrators . . . should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Hudson*, 503 U.S. at 7, 112 S. Ct. 995 (quoting *Whitely*, 475 U.S. at 321-22, 106 S. Ct. 1078 (quoting *Bell v. Wolfish*, 441 U.S. 520, 547, 99 S. Ct. 1861, 60 L. Ed. 2d 447 (1979)).

## IV. DISCUSSION

The evidence at trial requires this court to make a credibility choice between two

divergent positions. The plaintiff claims Norman slapped him and beat him with a pitcher without any cause. Norman asserts that he acted properly under the circumstances, that he never struck the plaintiff with a pitcher, and that the plaintiff's injuries were a consequence of his (Harris') behavior. This court must determine whether Norman acted in good faith to restore order and discipline or whether he acted maliciously and sadistically for the very purpose of causing harm to the plaintiff. *Hudson*, 503 U.S. at 7, 112 S. Ct. at 999. In examining this issue, the court has evaluated the traditional credibility considerations, including the demeanor of each witness, the bias or interest in the outcome of this litigation of each witness, the witnesses' recollection of events and any inconsistencies between the trial testimony and prior statements.

This case is different in many respects than the traditional excessive force case in that the positions of the parties are so diverse. It is not a case of whether the defendant simply exceeded what was necessary under the circumstances. The plaintiff's version of the events requires the court to find that the defendant simply intended to hurt him. He rejects any other construction of the evidence and asserts that Norman beat him with the pitcher, threw him on the floor, and dragged him down the stairs, resulting in lacerations to the top of his head, bleeding, and bruising all over his body.

After consideration of all the evidence, the court finds that the plaintiff has not satisfied his burden of proving his claim by a preponderance of the evidence for various reasons. Because of the significance of each reason, they will be addressed individually.

First, the plaintiff's testimony, particularly his demeanor, demonstrated that he was prone to exaggeration and distortion. By way of example, he stated that Norman entered the cell and "repeatedly" struck him on the top of his head with a pitcher. This, according to the plaintiff, resulted in the splattering of his blood on the bed and the floor and walls of the cell. He also

stated that Officer Walker was not present at the cell during the occurrence. Walker testified, contrary to the plaintiff's assertions, that he was at the cell, he cuffed the plaintiff, the plaintiff hit the bed, Norman did not strike the plaintiff with a pitcher, and his injuries were due to the fall in the cell and the hallway. This is consistent with the testimony of Norman. The court specifically finds the testimony of Walker to be credible. The court was impressed by his deliberative answers, his recall of the events, and his frank responses to questioning by counsel for Norman and the plaintiff. Additionally, the medical records are consistent with the defendant's version of the events.

Second, the court is not impressed by the plaintiff's challenge to the nurses notes from the treatment record. He asserts that the examining nurse, R. Blanchard, was part of a grand conspiracy to cover up the events surrounding his injuries. In sum, he claims that the injury she noted on his forehead was not the injury inflicted by Norman, but was an old scar. He claims that she did not document the actual injuries on the top of his head and the bruising to his entire body. The evidence does not support his claims. Blanchard made detailed findings. She described the injury next to his eye by stating that it was a "2 in. laceration of unknown origin to [the left] temple area, deep." (Defense Exhibit 4, treatment record).[3] She also stated that she cleaned the injury with water and applied "stri-strips." (*Id.*). In describing the injury to his forehead she stated it consisted of a "[s]m. scratch to front hairline [with] moderate amt. bleeding noted." (*Id.*). She stated that she applied pressure to the wound and cleaned it. She indicated that no further treatment was required. (*Id.*). She also noted a small scratch from the handcuffs on the plaintiff's left wrist. (*Id.*). She cleaned it and applied a band-aid. (*Id.*).

---

[3] References herein to "Defense Exhibit ___" are to the exhibits offered at trial.

9

Finally, she wrote the plaintiff's comment, "I'm hurt. Man, I'm hurt." (*Id.*). Blanchard's documentation is not consistent with a coverup.[4] The plaintiff's claim that she failed to document his real injuries makes no sense under the circumstances.

Third, the court also finds the commonality of Norman and Walker's testimony significant. It did not appear collusive or rehearsed, but struck the court as genuine. This is particularly true in view of the court's assessment of Walker. Nothing in the record supports the plaintiff's argument that there is some "policy" or "understanding" that prison officials will cover for each other. Without more, the court is unwilling to accept this argument to challenge the medical records and the testimony of Walker. Unlike Harris and Norman, he is not a party to this action and does not present the same biases and interest in the outcome. That is not to say that the court has overlooked the fact that he is employed by the State of Alabama and that he still works at the institution with Norman. These facts alone are insufficient to totally discount his testimony.

Fourth, the testimony of Lieutenant Eric Teske is supportive of the testimony of Norman and Walker. He described the training provided correctional officers, including that they are taught to maintain a "six foot reactionary gap" between them and the inmate for personal safety. He also explained that an officer's use of force, including shoving an inmate, to maintain that "gap" was proper procedure. He also confirmed the presence of blood on a portion of the bed cover and on the floor of the plaintiff's cell. This was consistent with the injuries he observed on Harris. What he did not confirm was the plaintiff's assertion that the blood was also on the walls of the cell.

---

[4] None of the witnesses recalled the plaintiff telling the nurse or anyone else of any additional injuries, including the complaints advanced at trial consisting of injuries to the top of his head and bruising over his entire body.

In assessing the evidence, the court also finds that the plaintiff's conduct at the cell – advancing aggressively towards Norman – and his actions at the hallway door necessitated Norman's responses. The force expended by Norman was not excessive and was reasonable under the circumstances. Further, the officers (Norman and Walker) reacted quickly, helping the plaintiff up and taking him for medical assessment and treatment at the infirmary.

The plaintiff has highlighted that Norman has made inconsistent statements at various times. The plaintiff notes that in the incident report Norman stated that he (Harris) "broke away from Officer Norman and hit the wall and fell to the floor, hitting inmate Harris' Head [sic] on the floor." (Defense Exhibit 4, p. 1). The plaintiff then notes that in his affidavit submitted in support of the Special Report, Norman stated that he (Harris) "hit the D-side entrance door," "fell to the floor and hit his head on the floor." (Doc. 19, Norman affidavit, p. 2). At trial, Norman stated that the plaintiff broke away, hit the door, and then fell on the track to the door on the D-side of the Unit. The court finds these differences to be insufficient impeachment to discredit Norman's overall recollection of the events at trial.

The court also notes that the defendant and the other testifying correctional officers did not have any previous negative or violent encounters with the plaintiff. Neither Walker or Teske appear to have any reason to lie under oath in the present circumstances.[5]

In sum, the plaintiff had the burden of proof and he has failed to convince the court that Norman acted with the necessary malice and sadistic intent. Judgment is therefore due to be entered in favor of the defendant.

---

[5] The court again notes that it is not overlooking their working relationship with Norman.

11

## IV. CONCLUSION

In view of the foregoing, the court finds in favor of the defendant and against the plaintiff. Accordingly, his claim for relief is due to be denied. An order consistent with this finding will be entered.

**DONE**, this 1st day of June, 2001.

**JOHN E. OTT**
United States Magistrate Judge